IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LUDMYLA SKORYCHENKO CARLBORG,

                                                                        OPINION and ORDER

        Plaintiff,

                                                                         10-cv-187-bbc

        v.

ERNEST TOMPKINS,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        In this civil action for monetary relief, plaintiff Ludmyla Skorychenko Carlborg contends that defendant Ernest Tompkins has violated his support obligation under the Immigration and Naturalization Act, 8 U.S.C. § 1183a. Defendant has filed a counterclaim for fraud against plaintiff, contending that his obligation to support her is void because she tricked him into marrying her. Plaintiff has filed a motion for summary judgment, dkt. #10, in which she contends that there are no genuine issues of fact that preclude summary judgment on her claim regarding an I-864 affidavit of support, as well as supplements to her motion, dkt. ##27, 28 and 29, in which she seeks summary judgment with respect to defendant's counterclaim for fraud.

        In an order dated August 24, 2010, I stayed decision on the motion for summary

1

judgment because defendant requested more time to conduct discovery regarding the issues of plaintiff's income and assets, whether plaintiff has mitigated her damages properly by seeking employment and whether plaintiff committed fraud.  Defendant filed supplemental materials on September 22, 2010, and plaintiff filed a supplemental reply on September 27.  Plaintiff's motion is now ripe for decision.

I will grant plaintiff's motion for summary judgment because there are no genuine issues of material fact requiring trial on plaintiff's claim for support, defendant's counterclaim or the amount of damages to which plaintiff is entitled.  Fed. R. Civ. P. 56(c) (summary judgment appropriate when the record shows "there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law); Hunter v. Amin, 583 F.3d 486, 489 (7th Cir. 2009).  Plaintiff's evidence establishes that defendant owes her $6320.96 in unpaid support obligations for the period October 16, 2009 to April 1, 2010.

Also before the court is plaintiff's motion to strike portions of defendant's affidavit submitted in response to her motion for summary judgment, as well as emails that defendant alleges were written by plaintiff to her friends and family in Ukraine.  Dkt. #24.  With respect to the affidavit, plaintiff moves to strike paragraphs 10 and 11, in which defendant alleges that he never abused plaintiff and plaintiff lied when charging defendant with abuse.  Plaintiff contends that because defendant was convicted of disorderly conduct in connection with a domestic abuse report, he should be prohibited from asserting his innocence to

2

domestic abuse. With respect to the emails, plaintiff contends only that they are "blatantly inadmissible." I will deny plaintiff's motion to strike because even if defendant's evidence has admissibility problems, this evidence fails to raise a genuine factual dispute that would make summary judgment improper. Thus, even if I consider defendant's evidence, plaintiff is still entitled to summary judgment.

From the parties' proposed findings of fact and the record, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

Plaintiff Ludmyla Skorychenko Carlborg, a citizen of Ukraine, arrived in the United States on October 24, 2004 on a fiancé visa. On November 18, 2004, she married defendant Ernest Tompkins. On January 4, 2005, defendant executed an immigration form known as the I-864 affidavit of support, in which he agreed to provide plaintiff whatever support would be necessary to maintain her at an income of at least 125 percent of the Federal poverty guidelines until either defendant dies or plaintiff becomes a citizen, leaves the United States permanently or can be credited with 40 quarters of work. Plaintiff and defendant were divorced on February 16, 2006. Defendant was ordered to pay plaintiff maintenance in the amount of $200 each month for six months and $426.50 for plaintiff's share of marital property. Sometime before the divorce, plaintiff accused defendant of domestic abuse. Defendant was found guilty of disorderly conduct in connection with the

3

complaint.

On October 22, 2008, plaintiff filed a lawsuit against defendant in this court to enforce the I-864 affidavit of support, <u>Skorychenko v. Tompkins</u>, 08-cv-626-bbc. In that case, I granted summary judgment to plaintiff on her claim that defendant had failed to support her at 125% of the federal poverty level as required by an I-864 affidavit of support that defendant had executed on plaintiff's behalf. In addition, I explained that defendant's obligation under the affidavit would not cease unless (1) he dies; (2) plaintiff dies; (3) plaintiff becomes a United States citizen; (4) she departs the United States permanently; or (5) she is credited with 40 qualifying quarters of work. 8 U.S.C. § 1183a(c). Plaintiff was awarded $10,948.60 for the period of February 16, 2006 to October 15, 2009. She did not seek injunctive relief in that case.

Plaintiff began the present lawsuit on April 6, 2010, contending that defendant had not fulfilled his support obligations since September 2009, and seeking unpaid support for the time period October 16, 2009 to April 1, 2010. I gave plaintiff the opportunity to ask specifically for injunctive relief, but she failed to do so.

Plaintiff is still a non-citizen, permanent resident of the United States and has not departed the United States. Plaintiff did not work between October 16, 2009 and April 1, 2010 and had no source of income during that period, although she receives $200 each month in FoodShare benefits from the social services department in Marathon County, Wisconsin. She was enrolled in a senior community service employment program, N.E.W.

Curative Rehabilitation, Inc., until April 26, 2010. On February 26, 2010, a director at N.E.W. Curative wrote to plaintiff informing her that the program had been unable to find a placement for her; it had not received information from plaintiff regarding her interest in training programs; and if the program could not find a worksite for plaintiff by the end of March, her enrollment in the senior service program would be terminated. The director also asked plaintiff to suggest possible work placement sites. On April 26, 2010, plaintiff was terminated from the program because there was no host agency available.

OPINION

A. Liability

Although a form I-864 affidavit is a contract between the sponsor and the United States Government, the sponsored immigrant may bring a lawsuit to enforce it as the named, third-party beneficiary. 8 U.S.C. §§ 1183a(a)(1), (e); 8 C.F.R. § 213a.2(d). If the sponsor fails to maintain the sponsored immigrant at or above 125% of the federal poverty level, the immigrant may pursue damages, an order for specific performance and payment of legal fees and other costs of collection. 8 U.S.C. § 1183a(c).

The undisputed facts make resolution of this case relatively straightforward. Defendant does not deny that he signed the I-864 affidavit and he has not presented any evidence that plaintiff received income for the time period between September 28, 2009 and April 6, 2010. Five circumstances terminate a sponsor's support obligations under the

statute and defendant's affidavit: "(1) the sponsor dies; (2) the sponsored immigrant dies; (3) the sponsored immigrant because a United States citizen; (4) the sponsored immigrant departs the United States permanently; or (5) the sponsored immigrant is credited with 40 qualifying quarters of work." Skorychenko v. Tompkins, 2009 WL 3126379, *2 (W.D. Wis. Sept. 28, 2009) (citing 8 U.S.C. § 1183a).  None of these circumstances are present in this case.  Both defendant and plaintiff are alive and plaintiff is a non-citizen permanent resident living in the United States who cannot be credited with 40 qualifying quarters of work. "Qualifying quarters" are counted (up to four each year) according to the amount of income a person receives in wages or self-employment income by three-month increments.  42 U.S.C. § 413.  Plaintiff has been in the United States only six years, so she could have worked for ten years.

Although defendant does not deny that he signed the affidavit and offers no evidence to suggest that plaintiff is living at or above 125% of the federal poverty level, he contends that he is not liable for other reasons.  In particular, defendant argues that plaintiff tricked defendant into marrying her, she committed fraud during their marriage by charging him with domestic abuse and obtained her permanent resident status through fraud.  In addition, defendant alleges that plaintiff has money and property in Ukraine and has not made an honest attempt to mitigate her damages by finding a job.

Defendant has submitted no evidence that plaintiff has money and property in Ukraine.  The only facts defendant proposed to support his contention that plaintiff entered

6

into the marriage for illegitimate reasons are several emails that plaintiff allegedly wrote to her friends and family in Ukraine. Defendant contends that plaintiff describes her unlawful plan to marry an American, divorce him and obtain permanent resident status in the United States. The emails are inadmissible because they are not the original writing, as required by Fed. R. Evid. 1002 and have not been authenticated by plaintiff, as required by plaintiff, as required under Fed. R. Evid. 901. Defendant avers that he found the emails on his computer and translated them from Russian to English using a computer translation program. He has not provided the original Russian versions of the emails. However, even if I were to consider the emails, they do not create a genuine factual dispute about plaintiff's alleged defrauding of defendant. Defendant submitted 16 emails but pointed to no language in particular that is evidence of plaintiff's alleged fraud and I can find no language to that effect in the translations he filed. In her responsive affidavit, dkt. #28, plaintiff avers that she came to the United States because of genuine feelings for defendant and she did not have a deceitful plan. If defendant wished to raise a genuine factual dispute, he needed to do more than point generally to a group of poorly translated emails. Moreover, the place for defendant to challenge the legitimacy of the marriage itself was before the state court in the divorce proceedings. He may not relitigate the validity of the parties' marriage here. Similarly, this is not the appropriate time to challenge the disorderly conduct charge or plaintiff's permanent resident status, as those issues have already by adjudicated by another court and an administrative body. Moreover, defendant does not explain why they are relevant to

7

whether the I-864 affidavit should be enforced.

Finally, defendant argues that plaintiff has failed to mitigate her damages by working. Defendant points to no controlling authority supporting his assertion that plaintiff is obligated to seek work to reduce defendant's obligation under § 1183(a). The law on this issue remains unclear. Compare Younis v. Farooqi, 597 F. Supp. 2d 552, 556-57 n.5 (D. Md. 2009) (assuming immigrant had duty to mitigate damages, but noting that even unwillingness to work might not relieve sponsor of liability in light of the "purpose of the affidavit–to ensure than an immigrant does not become a public charge."), with Stump v. Stump, 2005 WL 2757329, at *7 (N.D. Ind. Oct. 25, 2005) (concluding that duty to mitigate did not affect liability, but could affect damages because the duty is "a basic ten[e]t of contract law").

The requirement under § 1183a that a sponsor promise to maintain the immigrant is intended not only to protect the immigrant from poverty, but to protect the *government* from a public burden. Section 1183a(b) provides that when a sponsored alien receives public benefits as a result of the sponsor's failing to provide the promised support, the governmental entity may recoup those losses from the sponsor. If defendant could defeat a suit for damages by relying on plaintiff's failure to carry her part, government agencies would be stuck with the costs of the destitute spouse, with no recourse. On the other hand, agencies have their own reasons for declining to provide benefits to those who can provide for themselves, and the notion that an immigrant has a duty to mitigate damages not only

8

seems fair, but is consistent with the notion of plaintiff's status as a third-party beneficiary to a contract.

Regardless whether plaintiff has a duty to mitigate damages, defendant has failed to raise a genuine factual dispute whether plaintiff failed to do so. Defendant contends only that plaintiff is able to work and is not working because she has failed to provide appropriate information to N.E.W. Curative Rehabilitation, Inc., the work placement program with which plaintiff was involved. However, the February 26, 2010 letter defendant points to does not support an inference that plaintiff shirked her duty to seek employment while she was enrolled in the program. The letter states that the program had been unable to find a host agency for plaintiff, offered plaintiff the opportunity for training classes and asked plaintiff for worksite suggestions. Plaintiff was terminated from the program on April 26, 2010 because there were no host agencies available. Arguably, after plaintiff had been terminated from the program, she had an obligation to use other means to seek work and her failure to do so would violate a duty to mitigate damages. However, because plaintiff is seeking damages from defendant for the period October 16, 2009 to April 1, 2010, during which she was enrolled in the job search program, any failure to look for jobs after April 26, 2010 is irrelevant to this suit.

In sum, defendant has proposed no facts related to his affirmative defense that plaintiff failed to mitigate her damages by failing to find a job between October and April. His proposed facts do not support his theory that plaintiff's inability to obtain employment

9

is a function of her failure to look for work or accept employment, rather than a function of the current recession and N.E.W. Curative's inability to find a host agency for plaintiff.

### B. Damages

Defendant does not deny that he failed to maintain plaintiff at or above 125% of the federal poverty level from October 16, 2009 to April 1, 2010. According to the Federal Register, the poverty guideline for a household of one person for 2009 and 2010 is $10,830. The following figures represent 125% of the federal poverty levels, prorated for the months at issue:

- October 16, 2009 to December 31, 2009: $2855.86 ($13,537.50 – (13,537.50 x 288 days/365))
- January 1, 2010 to April 1, 2010: $3375.10 ($13,537.50 – ($13,537.50 x 274 days/365))

Because plaintiff had no income during this period, the total amount defendant owes for October 16, 2009 to April 1, 2010 is $6320.96. Judgment will be entered against defendant in that amount.

### ORDER

IT IS ORDERED that

1. Plaintiff Ludmyla Skorychenko Carlborg's motion to strike, dkt. #24, is DENIED.

2. Plaintiff's motion for summary judgment is GRANTED.

3. The clerk of court is directed to enter judgment against defendant Ernest Tompkins in the amount of $6320.96 and close this case.

Entered this 3d day of November, 2010.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge